FOURNET, Justice.
 

 One of its passenger buses having been damaged in a collision with a truck and trailer, the Teche Lines, Inc., instituted these proceedings and recovered judgment against Jack Gorum, the owner of the truck; James Miller, its driver; and the National Mutual Casualty Company, the owner’s insurer, in solido, for the cost of having the bus repaired. This case and its companion (instituted by the driver of the passenger bus to recover damages for the injuries sustained in the same collision) were taken to the Court of Appeal for the First Circuit on appeals taken by the defendants. The appellate court affirmed the judgment of the lower court in favor of the bus driver (Leforte v. Gorum et al., 7 So.2d 733), but, on its own motion, transferred plaintiff’s suit involving property damage exceeding $2,000 to this court because of its lack of appellate jurisdiction. Teche Lines, Inc., v. Gorum et al., 7 So.2d 736.
 

 Shortly after 1:00 p.m. on September 12, 1940, one of plaintiff’s passenger buses was travelling south toward New Orleans on its right side of the Baton Rouge-New Orleans Airline Highway when the driver noticed one of the state’s grass cutting machines in operation some distance away, moving in a northerly direction on the bus driver’s left side of the highway, behind which was a large truck, later identified as the property of the Louis Levy Grocery Company. At the time he was travelling between 40 and 45 miles an hour and he immediately slackened the speed to about 30 to 35 miles an hour as a precautionary measure, as was his custom, there being 'a possibility the truck would pass the slow-moving machinery because his bus was then some distance away. Noticing, however, that the truck was not going to attempt to negotiate the pass but had, instead, slowed to the speed of the grass machine and was following it, the bus driver continued at his slackened speed until he had passed the grass cutting machine and was abreast of the front of the Levy truck, when he saw another truck, unobserved until then, swing from behind the Levy truck immediately in front of him. He immediately applied his brakes and pulled to the right dirt shoulder of the highway, where he collided with this other truck, striking the right front of its coupled trailer, and causing the damages herein sued for.
 

 Appellants concede the driver of the truck was negligent, but they contend plaintiff is precluded from recovering because its bus driver was guilty of contributory negligence (1st) because his own testimony convicts him of “proceeding at an excessive, unsafe, and, hence, an unlawful rate of speed, into the face of a danger which he recognized and anticipated and with which he was familiar,” and (2nd) because he had the last clear chance of avoiding the accident by immediately applying his brakes when he saw the truck pull into his lane of the highway (contended by defendants to have occurred when the bus was 75 feet away) since the bus driver admitted he
 
 *998
 
 could have stopped his bus within 35 feet at the rate he was proceeding.
 

 The record in this case is made up of the evidence and testimony taken during the trial of the case Vardiman Gill, one of the bus passengers, brought against Jack Gorum et al. in the District Court of the United States for the Bajón Rouge Division of the Eastern District' of Louisiana, and also that taken during Leforte’s case against the defendants here, the latter case, as pointed out above, being appealed to the Court of Appeal for the First Circuit along with this one. The issues raised here were also raised in the Leforte case, and the' appellate court, disposing of the same, said [7 So.2d 735] :
 

 “The preponderance of the evidence shows that plaintiff was driving at a rate of speed of 40 to 45 miles per hour, on his right hand side of the paved portion of the highway, until he was within a distance of a few hundred feet of the grass-cutter unit, when, in accordance with his testimony, he reduced his speed to about 30 to 35 miles per hour in order to pass this unit safely. His testimony is not contradicted or impeached as to his reducing his speed. Even had he been travelling faster than thirty-five miles per hour, we cannot say that this would be an excessive speed in that there was nothing in front of him in his lane of travel to cause him to check or reduce his speed. He had no reason to expect that a vehicle coming from the opposite direction, on its right side, would suddenly swerve over into his lane of traffic, but on the contrary, he had the right to presume that oncoming traffic would obey the traffic regulations of this State and permit him to proceed on his right side of the road. We therefore absolve him of the first charge of negligence.
 

 “There is conflict in the contentions of counsel for plaintiff and defendant as to the distance the bus was from the Traveler [the Gorum truck] when the latter suddenly swerved out of its lane of travel into the traffic lane of the bus. The able and industrious counsel for defendants strenuously argues in his brief that the bus was some 75 feet from the Traveler when the latter pulled to its left across the west lane of travel. However, the testimony of the driver of the Levy truck, the testimony of the driver of the grass cutter unit and that of the bus driver leads us to believe that the distance was between 40 and 50 feet and not 75 feet as contended by the defendants. Such was the conclusion of the trial judge, and we see no manifest error therein. [Brackets ours.]
 

 “Defendants contend that according
 
 to-
 
 plaintiff’s own testimony he had sufficient space to stop and that by failing to stop, he was negligent. Plaintiff testified that, going at a speed of 30 to 35 miles per hour, he could stop the bus within about 35 feet. Our understanding of his testimony is that he meant he could stop his bus within that distance after the application of his brakes; he did not take into consideration the time necessary to-make the preparations to stop after becoming aware of the danger. Furthermore, we are dealing in split-seconds, and his testimony is that he could not determine whether Miller would pull
 
 *1000
 
 his trade bade into his right lane of travel or would continue on his left lane of travel or would take to the west shoulder. Plaintiff applied his brakes and swerved his bus to the right in order to go on the wide west shoulder. We see nothing wrong on plaintiff’s part in so acting on the spur of the moment. Plaintiff had nothing to do with creating the emergency with which he was confronted. The trial court, in his judgment states: 'Under such evidence, confronted with this sudden emergency, the Court must exonerate plaintiff of all negligence’, and further found that the sole and proximate cause of the accident was the negligence of Miller, the driver of the Traveler. We are satisfied that he was eminently correct.”
 

 Our appreciation of the evidence is that it supports the conclusions of both the trial judge and the appellate court.
 

 Under rule 7(c) of Section 3 of Act No. 21 of 1932, the prima facie responsibility for accidents occurring when the driver of a vehicle crosses the center line of the highway in overtaking and passing another vehicle where the left side is not “clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety” is placed upon the driver of such overtaking or passing vehicle. Furthermore, under the universal rule of law, “An automobile driver who, by the negligence of another and not by his own negligence, is suddenly placed in an emergency and compelled to act instantly to avoid a collision or injury
 
 is not guilty of negligence
 
 if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice and one that would have been required in the exercise of ordinary care, but for the emergency.” 5 Am.Jur. 600, Sec. 171. (Italics ours.) See, also, 2 Bashfield’s Cyclopedia of Automobile Law and Practice, Perm.Ed., §§ 919 and 942 ; 45 C.J. 713, Section 95; Southall v. Smith, 151 La. 967, 92 So. 402, 27 A.L.R. 1197; Schick v. Jenevein, 145 La. 333, 82 So. 360, 361; Potter v. Glassel, 146 La. 687, 83 So. 898; Lacy v. Lucky, 19 La.App. 743, 140 So. 857; Abel v. Gulf Refining Co., La.App., 143 So. 82; General Exchange Insurance Corporation v. Caraccio, La.App., 144 So. 630; Jacob v. Edwards, La.App., 171 So. 165; Allen v. Allbritton, La.App., 172 So. 198; Rockefeller v. Shreveport Yellow Cabs, La.App., 183 So. 141; Benton v. Griffith, La.App., 184 So. 371; and Hagaman v. Bankers Indemnity Insurance Co., La.App., 7 So.2d 390. Consequently, the authorities cited by counsel for appellants are inapposite.
 

 The bus driver had a right to believe the drivers of all vehicles approaching him would obey “the law of the road” and remain on their proper side óf the highway. Nowhere in the record do we find anything to indicate Leforte had reason to believe or anticipate the Gorum track would suddenly emerge from behind the Levy truck immediately in the path of his 22,000 ton bus loaded with passengers. It cannot be said the bus driver, confronted with such an emergency, was guilty of contributory negligence because of his failure to pursue
 
 *1002
 
 a course different from that he did, for it was impossible for him to determine just what the truck driver who had created the emergency would do.
 

 For the reasons assigned, the judgment of the lower court is affirmed, at appellants’ cost.
 

 ODOM, J., takes no part.